And we'll move on to our last argument, United States v. Franklin and his fight. Thank you, and may it please the court. These appeals present a single issue. Is Wisconsin burglary an armed career criminal predicate? This issue is easier than it was at the district court level in either of these cases, given the new precedent, Mathis and Edwards. Under Mathis, the question is whether Wisconsin burglary's location alternatives are elements or means. And that is a pure, legal, pretty technical question. Would jurors have to unanimously agree on the location to find a defendant guilty? And is a defendant who pleads guilty necessarily admitting to the location? In tracking this court's analysis in Edwards, every factor points to the locations as means. The various location subsections overlap, they carry the same penalty, and they are conceptually equivalent. So the only sticking point in this case is that the burglary locations are subdivided. But that's just a point of style. The Wisconsin legislature likes subdivisions. And I was a state public defender for some time. I like subdivisions too. The federal criminal code is a little bit harder to read. And Mathis speaks directly to this point. The issue in Mathis was whether the divisibility analysis would be controlled by the Shad line of cases on elements versus means, or whether it would be controlled by whether a state legislature chooses an umbrella term that is overbroad, or chooses to create a disjunctive list of means, some of which would count, some of which wouldn't, so that would be overbroad too. And what the Supreme Court in Mathis said is we have to focus on what is the actual element. And in the Supreme Court's words, they said that the analysis doesn't depend on the fortuity of legislative drafting. Now yesterday the government filed a 28-J letter on an Eighth Circuit case, U.S. v. Liam. And I was on the road at that point, so I could file something in writing if your honors would like that. I'll respond to it in a few ways right now. First, the defendant in that case did not make this argument at all. They apparently agreed that sub 943.10 sub 1M sub A was a distinct offense, and exclusively made the argument that since the Wisconsin courts have never defined dwelling, maybe it means something broader than what Taylor intends. So they didn't have the benefit of really looking at the law at issue here. The second point is that the one state case they cite, Baldwin, honestly it's sort of inexplicable to me why it was cited in the case. They cite a specific sentence about various subsections of the previous Wisconsin sexual assault law that really didn't have much of anything to do with the Baldwin case. And, in fact, it's, I think, helpful to the defense here that the government filed the Baldwin case along with their 28-J letter. I kind of wish I had found it previously, because it's really helpful in illustrating what this court found in Edwards, which is that in Wisconsin, Shepard documents aren't that helpful. In that case, the charging document had charged the defendant in the conjunctive, saying that they had used force and threatened force. But then the jury instruction said used force or threatened force. And the Wisconsin Supreme Court said it doesn't matter what they wrote in the complaint. All that matters is whether under the statute the use and threat of force are elements or means. In that case, they were means. It was completely fine that it was presented to the jury in the disjunctive. The jury did not have to be unanimous. And then the last thing I'll say about Lamb is they say we haven't found any Wisconsin cases that don't sort of go out to the subdivision, that don't refer to the location. I don't really think that makes a difference. In any case, you're going to talk about the location of the burglary. But also I'll need to go back when I get to the office, but certainly I feel like I've seen quite a few Wisconsin cases that refer to burglary more generally. They don't always cite out to every subdivision. So I'm not sure if perhaps the Eighth Circuit was referring to the cases that were cited in the briefing in that case, which, again, the briefing was on a different issue. I'll just say, for what it's worth, I would welcome an additional written supplement on that point because I've got to say the Eighth Circuit decision looked pretty well thought through to me. But if you think they got the Wisconsin law wrong, we'd like to hear about it. They obviously know that we're at least think we're probably a little more familiar with Wisconsin law here, but nevertheless had to make a decision. I'd be happy to do that, Your Honor. And in particular on the point the court made at page 932, we find support for this conclusion in Wisconsin precedent practice. Prior reported decisions all reflect that defendants were convicted of violating a specific subsection of 1M. Right, and that's the point I was just saying. I mean, the Wisconsin cases certainly aren't defining the crime of conviction. They probably talk about the location in most of them, but I would be happy to do something in writing. If there are no questions. Hang on just a second, if you would. Sure. Could Mr. Somm, if we send this back, could Mr. Somm be charged with additional counts since he had three guns? Well, Your Honor, the plea agreement in this case wrapped up his case, and it was with an agreement that, you know, there was no appeal waiver or anything. That's if he is permitted to appeal the sentence. So I don't think it would unravel the plea in this case. So I guess the answer is no. Does the statute run on the possession? Could he be charged with two more counts? I believe under the terms of the plea agreement, no, he could not. Okay, thank you. Thank you. Okay, thank you. Ms. Schiebelinski? Good afternoon, Your Honors. May it please the Court. My name is Laura Schiebelinski-Finn. I'm an assistant U.S. attorney in Madison, Wisconsin. To answer Judge Hamilton's question first, Somm's plea agreement would protect him at this point. This is really just a sentencing issue. And so if the Court were to decide that the burglary statute is not divisible, these would go back and they would be facing 10-year statutory maximums as opposed to the 15 years. With respect to Lamb, I agree with the Court. Lamb very carefully analyzed the statute. Lamb was remanded after Mathis. The Court looked at Wisconsin precedent and cases and they made their decision based on that. And I will say that I have researched the Wisconsin cases and I couldn't find any where a specific subsection wasn't picked. And that makes perfect sense when you look at the statute because we keep talking about what the element is, what is the locational element. Well, what is it? Because when you look at the statute, you have to pick one. It's a blank. There's nothing there. The temptation is to insert building as a generic term, but that's not how the statute is written. If there is any burglary statute in the country that has alternative locations that is going to survive Mathis, Wisconsin burglary is the one to do it because it doesn't have this umbrella term like occupational structure defined in a different part of the statute and then defined in broad terms that the Court looked at as means. What the Wisconsin statute says is you enter any one of these places without consent with the intent to steal or commit a felony and then you have to pick one. And when Lamb cited Baldwin, to me that was very insightful because when they're looking at Baldwin, there too are subsections and the first subsection of how you commit this crime is a violent and forceful way. That's A. And then the rest of them are a little bit different. One is if someone was mentally ill. One is if somebody was unconscious. So there's only one of those where you use violence, and I think we can circle back to the Wisconsin statute and then go all the way back to Taylor. Taylor said, look, generic burglary is you have to enter a building or a dwelling. Okay, so a building or a structure. There's no question here that Franklin and Somm were convicted of generic burglary. There's nothing confusing about it. They were both convicted under that subsection. What we're really trying to do is make it confusing. Do what? What we're really trying to do is what? Is to make a straightforward statute more confusing than it is because the argument is that all these things are kind of the same and you really can't tell which one and it really doesn't matter. But it does matter because under Taylor, the only subsection of the Wisconsin statute that qualifies as a generic burglary is subsection A. It must mean something. It means something to someone. It says what? It says building or dwelling. And as this court defined dwelling in Edwards was an enclosed structure. So that definition is out there. So we've got a perfect fit in terms of a generic burglary with subsection A, and yet what we want to do is say, yeah, but what if it was B or what if it was C or what if it was D? The fact is it wasn't. In each case that I've seen, what's charged is a specific subsection. There is not this umbrella term. It's as clear as can be. And I think it survives Mathis. It's different than the other statutes cited. It's different than DeCamps. Why does it say building or dwelling? Are there dwellings that are not buildings? Could it be tents or something? Well, in the original version of the statute back in the 50s, tents was found, but now we don't find tent in there at all. And as this court defined it in Edwards, the court said it's best understood as providing two examples of an enclosed structure rather than creating two separate offenses. In addition, the defendant concedes that if this court were to find this and that subsection A was divisible, these judgments stand. And I don't think there's any reason to disturb that under these facts, under the law, in light of how Lamb analyzed it. And then there's also the 11th Circuit case in Gandhi that took the Georgia statute that is similarly worded, also doesn't have an umbrella term, and they determined that that statute survives Mathis as well. And it just makes sense. So I'm having a little trouble. How do we rule in your favor without overruling Edwards? Edwards was very specific and went only to whether or not subsection A of the statute is divisible in and of itself. Right. But since you're counting on A to save these sentences, why doesn't Edwards, by saying that A is, why did it matter in Edwards? Because in Edwards, Edwards dealt with career offender guidelines, and the definition for a crime of violence there, or burglary there was the burglary of a dwelling specifically. So you couldn't even use building. Building doesn't count under the guidelines, only dwelling did. Now, of course, that's all changed as well. So the focus in Edwards was whether you could pull apart subsection A and whether you could pull apart building or dwelling. Here you don't need that. Under the ACC, you don't need to pull those things apart. The building is enough. It is. Would a recreational vehicle count as a dwelling? Not under the definition in Edwards, and there's a separate section under the Wisconsin burglary statute for recreational vehicles, and a separate section that defines motor home different than a mobile home. But here we have building or dwelling, so it's. And tents? We have no tents anywhere. No tents. No tents. No tents. Unless there are any other questions, the government stands on its brief. Okay. Thank you, Ms. Schiblinski. Ms. Feit, do you have anything further? Thank you. The prosecutor says this language must mean something to someone, why it's subdivided, and it does. It means something in federal court, apparently, at least it has in the past. In Wisconsin, that's just not true. You know, the government acknowledges, although in a footnote, that at least one of the subsections obviously overlaps with everything because the final section is a room within any of the above. So the idea that these are divisible elements would mean that breaking and entering into a house could be charged as burglary under two different subsections, theoretically. If you got acquitted of one, they could come back and charge you and put you to trial again. And, you know, also, so why does it say building or dwelling? In a lot of these cases, at least according to the PSR, what we're talking about is a building or a dwelling. I mean, these are automated judgments of conviction that are produced by a computer system. It's not like there's a judge determining what the elements of the offense are for what's written on the judgment of conviction. And that's why under the categorical analysis, we focus on the statute itself because judgments can be very detailed, they can be really bare bones, and they can be everything in between. So how does a judge instruct the jury in a burglary case on the location element? Well, the judges in Wisconsin have a tremendous amount of freedom. So they could say building or dwelling. They could say building. I'm going to use Maple Street to use the example that the Supreme Court used in Mathis. Because in Mathis, what they say is, in any jury trial, the jury is going to know that this is about 122 Maple Street. And probably in most cases, they'll agree we're talking about 122 Maple Street. But if that's not an element of the offense, if it's still just a means that it's a building versus, in that case, it was a land vehicle or an air vehicle, then that's just the circumstances and the facts of the case that a sentencing judge may not rely on to impose a mandatory minimum. I mean, we're talking about armed for criminal here, so huge mandatory minimum jump, huge mandatory maximum jump. Not mandatory maximum. Statutory maximum. Thank you. Thank you. Okay, well, thank you very much, both counsel. And the court will be in recess. Thank you.